UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

EVERETTE WEAVER,

                Plaintiff,

v.                                               Case No.  5:09-cv-514-Oc-34TBS

MATEER AND HARBERT, P.A., et al.,

                Defendants.

_____/

ORDER

      Pending before the Court are plaintiff, Everette Weaver's Motion to Compel

Discovery of Defendant Lewis Dinkins (Doc. 100); Mr. Weaver's Motion to Compel

Discovery of Defendant Mateer and Harbert (Doc. 102); his Motion to Compel

Discovery of Defendant Renee Thompson (Doc. 103); and Plaintiff's Motion to Appoint

Counsel (Doc. 160).

I.  The Third Amended Complaint.

      Mr. Weaver's Third Amended Complaint (Doc. 162) alleges that he engaged

the Mateer & Harbert law firm ("Mateer") to overturn a $1,000,000 default final

judgment that had been entered against him and to obtain for him a $250,000

judgment against Peter Zarcone d/b/a Southway Building Corporation ("Southway").

Defendant, Renee Thompson was the Mateer lawyer with primary responsibility for

the representation.  Mr. Weaver is suing Mateer and Ms. Thompson for breach of

contract, breach of fiduciary duty, professional negligence and unjust enrichment in

connection with the engagement.  He alleges he was damaged because the judgment

was not vacated, he did not recover a judgment against Southway, title to his home in

Florida was clouded by a notice of lis pendens and the property, upon which he owed

over $400,000 was ultimately auctioned and sold for $100.

Defendant, Lewis Dinkins was the attorney for Southway who caused the lis

pendens to be recorded against Mr. Weaver's home.  Mr. Weaver seeks damages

from Mr. Dinkins for professional negligence, the intentional infliction of emotional

distress and legal fees based upon Mr. Dinkins alleged failure to adequately

investigate Southway before agreeing to represent it and for the recording of the lis

pendens.

II. The Motion to Compel Discovery from Lewis Dinkins.

Mr. Weaver propounded the following interrogatories and received the

following answers from Mr. Dinkins:

> Interrogatory No. 17.  Explain in detail what happened when you
> went off the record to discuss the Goldstone Homes case with
> plaintiff's former attorney Renee Thompson and the presiding
> Judge Jack Singbush.
>
> Answer: I have no recollection.
>
> Interrogatory No. 23.  On September 10, 2007 was Everette
> Weaver present in the courtroom?  If not, give the names of the
> people present in the Courtroom on that day and if you do not know
> their names give a description of each person?
>
> Answer: This interrogatory is objected to as exceeding the 25
> permitted interrogatories under Rule 33(a)(1), and no permission to
> exceed that number has been obtained by Plaintiff.  Nevertheless,
> the answer is "unknown and unable to do so."

Apparently, there was a hearing in state court on September 10, 2007 that was

attended by Mr. Dinkins, Ms. Thompson and possibly others.  Mr. Weaver denies

being present but there is a transcript of the proceeding which shows him responding

to a question from the judge.  This has resulted in Mr. Weaver propounding discovery

to the defendants concerning his presence at the hearing.  He is not satisfied with Mr.

Dinkins responses to these interrogatories because in his opinion, Mr. Dinkins either

knows the answers or if he cannot recall, he can find the answer to interrogatory 23 in

the records in his possession (presumably the transcript).  (Doc. 100).  In his response

(Doc. 104), Mr. Dinkins says his interrogatory answers are truthful and neither

contradictory or evasive.  He also says he did not have the benefit of the hearing

transcript when he answered the interrogatories.

　　　"Each interrogatory must, to the extent it is not objected to, be answered

separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).  The answers

must be "true, explicit, responsive, complete, and candid."  Equal Rights Center v.

Post Props., Inc., 246 F.R.D. 29, 32 (D.D.C. 2007)(quoting Hansel v. Shell Oil Corp.,

169 F.R.D. 303, 305 (E.D. Pa. 1996)).  The party seeking the discovery has the

burden of proving that a discovery response is inadequate.  Equal Rights Center, 246

F.R.D. at 32.  Mr. Weaver has not met his burden of showing Mr. Dinkins' answers to

the interrogatories are inadequate, incomplete or evasive.

　　　Mr. Weaver also asked Mr. Dinkins to produce documents.  The requests and

responses in controversy are:

> Document Request No. 1. Copy of the summons the clerk of Court
> issued for Everett Weaver.
>
> Response: not available.
>
> Document request No.2. Copy of the proof of service to prove that
> Everette Weaver was served by a process server.

Response: A copy of the proof of service is produced with these responses.

Document request No. 3. Copy of the invoice you received from John Dorough for Southway's portion of the mediation settlement conference.

Response: not available.

Document request No. 4. Copy of the cancelled check you paid to John Dorough for the mediation settlement conference.

Response: not available.

Mr. Weaver is concerned about service of process because he contends that in a state court action original process was not served on him.[1]  He is interested in payment for a mediation because, he says, Mr. Dinkins has stated that Southway paid one-half of the mediator's fee for a mediation and Mr. Weaver does not believe the mediator ever sent Southway a bill.  Mr. Dinkins says he has produced the only responsive document in his possession and that he otherwise does not know or recall the information Mr. Weaver is seeking.  While Mr. Weaver may not believe Mr. Dinkins he has not met his burden.  He has not provided the Court any basis upon which a finding could be made that Mr. Dinkins is lying or that the requested documents exist and are in his possession.

III. The Motion to Compel Discovery from Mateer.

Mr. Weaver seeks an order compelling Mateer to answer or better answer the following interrogatories:

---

[1] In her motion papers Ms. Thompson argues this is not an issue.  She states "In light of the Court's ruling that Mr. Weaver submitted himself to the Court's jurisdiction whether a Summons was issued or not is not relevant . . ."  (Doc. 112).

-4-

> Interrogatory No. 2. If you had a contract to represent Weaver did
> you breach the contract?  If no, itemize the steps you took to
> protect the interest of Weaver.

> Answer: No. Defendant objects to the second question in
> Interrogatory # 2 in that it is overly broad, burdensome and
> designed to force an exhaustive or oppressive catalogue of
> information.  Additionally, it is vague in that it is unknown what
> plaintiff means by "protect the interest of Weaver."

According to his motion, what Mr. Weaver is attempting to learn from this interrogatory is what Mateer did for the money it charged him.  (Doc. 146).  Mateer's position is that it answered the only part of the interrogatory it understands and the second part is not a good faith effort at discovery as evidenced by Mr. Weaver's statements including that Mateer's legal representation of him was "faulty, defective and deficient."  (Doc. 102).  Because Mr. Weaver has sued Mateer for breach of contract the scope of the firm's engagement, the services it was supposed to provide and the services it actually performed as part of the engagement are relevant. Therefore, it is appropriate for Mateer to state what work it did for Mr. Weaver.

> Interrogatory No. 4. Did the clerk of the Court ever issue a
> summons for Everett Weaver?  If no, state what actions you took
> after you found out?  If yes, submit a copy.

> Answer: Unknown.

Mr. Weaver's issue with this and several of the defendants' other interrogatory answers is that he believes they should be answered "yes" or "no."  The Court respectfully disagrees. Lack of knowledge or the ability to recollect is, if true, a fair answer.  In this case, Mr. Weaver has not demonstrated that Mateer's answer is untruthful or otherwise inappropriate.

> Interrogatory No. 8. Why did you bill Weaver for 7.5 hours to travel
> to the Marion County Building Department to retrieve records?
> Please state what records you collected and how you used each
> record to represent your client's interest?
>
> Answer: Defendant did not bill Plaintiff 7.5 hours to travel to the
> Marion County Building Department to retrieve records.  Defendant
> objects to the second question posed in Interrogatory # 8 in that it
> is overly broad, burdensome, vague and is designed to force an
> exhaustive or oppressive catalogue of information.

This interrogatory is another attempt by Mr. Weaver to find out what Mateer did

for him.  The firm has answered the first question.  As to the second question, if

Mateer obtained records from the Building Department as part of its engagement by

Mr. Weaver then identification of those records and how they were used by Mateer is

discoverable.

> Interrogatory No. 9. Did attorney Dinkins ever threaten any of the
> witnesses you subpoenaed to testify in this matter?  If yes, state
> the actions you took after you found out.
>
> Answer: Not to our knowledge.

One of the recurring issues in these discovery motions is that Mr. Weaver does

not believe the defendants' responses.  In Mr. Weaver's opinion, Mateer's answer to

this interrogatory is a lie.  However, his belief, in the absence of evidence is not

sufficient to meet his burden to compel a better answer to the interrogatory.

> Interrogatory No. 10. Were you aware that attorney Dinkins filed a
> lis pendens against Weaver's home?  If yes, what did you do about
> it?
>
> Answer: Yes.  Defendant objects to the second question in
> Interrogatory # 10 as argumentative.

While Mateer may find the second question argumentative, if the firm's engagement included responding to the lis pendens then Mateer is obliged to state what in fact it did about the lis pendens.

> Interrogatory No. 14. Explain in detail the difference between the representations you provided to Weaver and the attorney work product prepared by your firm and faxed to John Dorough on October 22, 2007.

> Answer: This Defendant objects to Interrogatory # 14 as exceeding the 25 permitted Interrogatories under Rule 33(a)(1), and no permission to exceed that number was obtained by Plaintiff and is ambiguous, vague, confusing and unintelligible.  (Sic)

Mr. Weaver does not dispute Mateer's contention that when sub-parts are included, this and the remaining interrogatories exceed the 25 permitted by Rule 33(a)(1).  Because Mr. Weaver did not obtain prior leave of Court to propound more than 25 interrogatories to Mateer this objection is sustained.  Mateer's Rule 33(a)(1) objection also disposes of Mr. Weaver's motion to compel answers to Interrogatories 15 and 19.

If the Court had overruled Mateer's Rule 33(a)(1) objection it would have sustained the firm's objection that this interrogatory is vague and ambiguous.  First, Mr. Weaver may believe there is a difference between unknown representations made to him by Mateer and the work it shared with a state court  mediator but the reader cannot tell from this interrogatory what information he is referring to.  He did not defined what he meant by the phrase "attorney work product."  In law, "work product" is commonly understood to mean material prepared by an attorney in anticipation of litigation or in preparation for trial.  See, Rule 502(g)(2) Fed. R. E.  However, the

reader cannot tell from the interrogatory if that is what Mr. Weaver meant and if he did,

then we still don't know what statements to the mediator Mr. Weaver is referring to.

Next, Mr. Weaver complains that Mateer failed to produce documents in

response to the following six requests:

> Document request No.1.  Copy of the contract between plaintiff and Mateer
> and Harbert.

> Document request No. 2.  Copies of all invoices sent to plaintiff regarding the
> subject matter.

> Document request No.3.  Copies of all checks received from plaintiff
> regarding the subject matter.

> Document request No. 4.  Copies of all checks paid by Mateer and Harbert on
> plaintiff's behalf.

> Document request No. 5.  Copy of Mateer and Harbert's attorney work
> product regarding the above subject matter.

> Document request No. 6.  Copy of Pater Zarcone DBA Southway Building
> Corporation insurance which Mateer and Harbert collected from the Marion
> County Building Department.

The Mateer firm made the following objection to all six requests:

> Response: Objection.  Plaintiff has not paid Defendant's attorney's
> fees in the amount of $6,172.51 and under Florida law, Defendant
> has a retaining lien against all file material until all fees are paid.

Mr. Weaver's stated reason for wanting the requested documents is so that

Mateer cannot object to them at trial and because "billing a client for simply doing

nothing is a fraud."

The concept of an attorney's retaining lien goes back to the English common

law.  The Flush.  Thompson.  Bulk Oil Transports v. Robins Dry Dock & Repair Co.,

277 F.25, 27 (2nd Cir. 1921).  A retaining lien is a possessory lien which the attorney

may assert until his fees are paid or the former client provides adequate security for payment of the fees.  Andrew Hall and Associates v. Ghanem, 679 So.2d 60, 61 (Fla. 4th DCA 1996).  Should the former client obtain access to the file before the fees are paid or security given the value of the lien would be severely impaired.  In Foreman v. Behr, 866 So.2d 705 (Fla. 2nd DCA 2003) the former client (Foreman) sought discovery of his file from his former attorney (Behr) in Foreman's legal malpractice suit against Behr.  Behr opposed the discovery on the ground that he held a retaining lien over the file.  The court agreed with Behr and denied the requested discovery.  The outcome is different when the attorney files a lawsuit against the former client to collect the fee.  Foreman and Fingar v. Braun & May Realty, Inc., 807 So.2d 202 (Fla. 4thDCA 2002).  Mateer has not counterclaimed against Mr. Weaver and therefore, because it claims a retaining lien he cannot compel production of documents from the firm's fle at this time.

IV.    Motion to Compel Discovery from Renee Thompson.

        Mr Weaver is not satisfied with Ms. Thompson's responses to the following interrogatories:

> Interrogatory No. 1.  Could you have won the case against Southway building in which you represented Weaver?  If yes, explain in detail what you did wrong.  If no, explain why not.
>
> Answer: This Defendant was not involved in Plaintiff's case long enough to be able to provide a response to Interrogatory # 1. However, it is noted that when Plaintiff employed Defendant a motion for summary Judgment had already been entered against him and the Court denied a motion for rehearing.

This is another interrogatory to which Mr. Weaver would like a "yes" or "no" answer and, he believes the answer should be "no" based upon an alleged conversation Ms. Thompson had with a third party. This hearsay is insufficient for Mr. Weaver to meet his burden. Ms. Thompson has committed herself by her answer to the interrogatory. If the third party witness is prepared to give the testimony attributed to him by Mr. Weaver then it will be up to the trial judge to decide whether the testimony is admissible to impeach Ms. Thompson.

> Interrogatory No. 2. Did you tell attorney Dennis Wells that you could not have won the case because attorney Lewis Dinkins and Judge Jack Singbush had been friends for many years? If no, please correct any words or phrase in the above statement in order the statement to be deemed accurate.
>
> Answer: No. Defendant objects to the second question in Interrogatory # 2 in that it is argumentative; however, without waiving this objection, the answer would be "I did not tell attorney Dennis Wells that you could not have won the case because attorney Lewis Dinkins and Judge Jack Singbush had been friends for many year."

Mr. Weaver's request for an answer to his second question will be denied. Ms. Thompson has denied making the statement in question and it would be inappropriate to compel her to reconstruct a statement she denies having made so that it accurately sets forth a different, unknown statement (assuming she made any statements to Mr. Wells about Mr. Weaver or his case)..

> Interrogatory No. 3. Why was Peter Zarcone never arrested? Did you notify the state attorneys office that he perjured himself? If no, state why you failed to notify them? If yes, state when and who you reported the matter to for an investigation.
>
> Answer: Unknown. No. There was no indication to do so.

Mr. Weaver's ground why the Court should compel better answers to the questions in this interrogatory is that Ms. Thompson allegedly made contradictory statements to a third party witness and because "attorney work product" faxed to a mediator (presumably by Ms. Thompson) allegedly states that Mr. Zarcone perjured himself at a court hearing on August 9, 2007.  The Court finds that Ms. Thompson has answered the first three questions posed in this interrogatory and her responses moot the fourth question.  This is another circumstance where it will be up to the trial judge to decide whether Mr. Weaver's contradictory evidence will be admissible to impeach Ms. Thompson's answers.

> Interrogatory No. 6.  Did you tell Weaver that he could file a claim with the state fund which contractors pay into and they will refund him $15,000.00?  If no, please correct any words that are inaccurate from the above statement.
>
> Response: Defendant told Plaintiff that he could file a claim with the Department of Business Administration.  Defendant did not mention the sum of $15,000.00.

This is another interrogatory to which Mr. Weaver would like a simple "yes" or "no" answer.  In her response to his motion to compel Ms. Thompson has amended her answer to add the word "No" at the beginning.  Both her original and amended responses sufficiently answer this interrogatory.

> Interrogatory No. 7.  If you had the insurance detail for Peter Zarcone DBA Southway, which shows that he had two million dollars of insurance, why did you fail to fie a claim with the insurance company or notify Weaver so that he could file a claim with the insurance company?
>
> Response: Defendant objects to Interrogatory # 7 in that it is vague, ambiguous, and it does not specify what type of insurance Plaintiff is referring to or is it clear what kind of claim could be filed against the insurance company.

Mr. Weaver believes his motion to compel better answers to this interrogatory should be granted because he says, Ms. Thompson's representation of him was negligent.  Her objection is based upon her professed lack of knowledge of what insurance policy Mr. Weaver is referring to.  The Court agrees with Ms. Thompson that Mr. Weaver should have better identified the insurance policy he was referring to.

> Interrogatory No. 8.  Why did you tell Weaver that he could file a claim with the state fund for contractors and collect $15,000.00, when you knew that Peter Zarcone DBA Southway was insured for two million dollars?
>
> Response: Defendant objects to Interrogatory # 8 in that it is argumentative and assumes she told him he could collect $15,000.00 and that she knew that Peter Zarcone DBA Southway was insured for $2,000,000.00.

According to Mr. Weaver his motion to compel a better answer to this interrogatory should be granted because "the defendant deliberately fed plaintiff misinformation, disinformation and the wrong information in order to collect monies for simply doing nothing . . ."  Whether Mr. Weaver is correct is an issue of fact which may have to be decided at trial, in the meantime, his opinion is insufficient to carry his burden on his motion to compel.

> Interrogatory No. 9.  Did you have a fiduciary duty to protect the interest of Weaver?  If no, explain why your answer is no.  If yes, explain in detail what you did as an attorney with a fiduciary duty and what you failed to do?
>
> Answer: Yes.  Defendant objects to the third question in Interrogatory # 9 in that it is vague and burdensome and it is designed to force an exhaustive or oppressive catalogue of information that would be improper.  Additionally, it is argumentative in that it assumes that Defendant violated her fiduciary duty.

Mr. Weaver's motion to compel is directed to the third question in this interrogatory.  He says "plaintiff wants to know what Thompson thought her obligations were and if she fulfilled her obligations to plaintiff . . ."  Ms. Thompson has

denied liability in this case and the Court agrees with her that the last part of the third

question asking her what she failed to do is argumentative.  Therefore, that objection

is sustained.  However, to the extent this question asks Ms. Thompson what

professional services she performed on Mr. Weaver's behalf the information is

discoverable and to that extent, she should answer.

> Interrogatory No. 10.  Did Weaver enter the Courtroom on September 10,
> 2007?  If yes, do you have any witnesses to prove that Weaver was present
> in the Courtroom on September 10, 2007?  If no, give a list of all the people
> present in the Courtroom on September 10, 2007.
>
> Answer: I believe so.  I have not presently discussed this issue with any
> witness.  I do not know who was in the Courtroom on September 10, 2007
> other than those individuals whose names appear in the record.

This is another interrogatory to which Mr. Weaver seeks a "yes" or "no"

answer.  The Court understands Mr. Weaver denies having been in the courtroom for

a hearing on September 10, 2007 and this may be an issue of fact to be resolved at

trial.  In the meantime, he has the hearing transcript and Mr. Dinkins and Ms.

Thompson's written testimony concerning their recollections.  While Ms. Thompson's

answer may be unsatisfactory to Mr Weaver the Court finds it is responsive to the

interrogatory.

> Interrogatory No. 11.  Why does the transcript before Judge Singbush on
> September 10, 2007 have Weaver responding to the Judge on Page 7, line
> 25.  Is this transcript accurate or was it altered??
>
> Response: Presumably because Mr. Weaver responded to the Judge.
> Unknown.

Again, the Court understands Mr. Weaver is not satisfied with Ms. Thompson's

response because he believes the transcript is wrong and perhaps was altered but his

opinion on this matter is not a ground to compel any further answer from Ms. Thompson.

> Interrogatory No. 15.  Did you prepare an attorney work product?  If yes, submit a copy with your answers.  If no, explain why you failed to prepare one.
>
> Response: This Defendant objects to Interrogatory # 15 as exceeding the 25 permitted Interrogatories under Rule 33(a)(1), and no permission to exceed that number was obtained by Plaintiff.  This Defendant objects to Interrogatory # 15 as vague in that it refers to "attorney work product" but does not specify the attorney work product.

The court sustains Ms. Thompson's Rule 33(a)(1) objection to this and the remaining interrogatories in controversy.  For the reasons discussed above, the Court would also sustain her objection based upon the vagueness of the phrase "attorney work product."

Mr. Weaver propounded four requests for production to Ms. Thompson all of which she objected to.  The first three requests and her uniform objection to each follow:

> Document request No.1.  Copy of the inquiry/complaint, the Florida bar file No. 2009-30,163 (5A), you received from the Florida bar association regarding a complaint filed by plaintiff against Renee Thompson.
>
> Document request No. 2.  Copy of Renee Thompson's response, to the Florida bar association regarding plaintiff's complaint.
>
> Document request No.3.  Copy of plaintiff's rebuttal sent to the Florida bar association and also to Renee Thompson.
>
> Response: Objection.  The documents sought in Request Number [ ] are beyond the scope of Rule 26(b) in that these documents are already in Plaintiff's possession, can be obtained directly from the Florida Bar more conveniently and the request is designed for harassment purposes only.

The final request and response are:

Document request No. 4.  Bio for attorney Renee Thompson as
displayed on Mateer and Harbert's website.

Response: Objection.  The document sought in Request Number 4
is beyond the scope of Rule 26(b) in that the document is already in
the Plaintiff's possession, or may be easily obtained directly from
the Mateer & Harbert website and this request is designed for
harassment purposes only.

Mr. Weaver's stated reason for requesting these documents is that "otherwise,
the defendant may object to the documents at trial and the defendant lied to the bar in
her response and plaintiff spoke to the bar concerning the matter and plaintiff was told
by the bar to file another complaint and this is why the defendant objects because the
bar will sanction her for lying."  According to Federal Rule of Civil Procedure 26(b)(1)
"Parties may obtain discovery regarding any nonprivileged matter that is relevant to
any party's claim or defense . . ."  If the Court assumes Mr. Weaver complained to the
Florida Bar about the same legal representation that is the basis of his claims against
Ms. Thompson and Mateer then the parties statements in their filings might contain
admissions against interest or inconsistent statements that would be relevant to this
lawsuit.  However, this Court does not understand how obtaining copies of these
documents from Ms. Thompson pursuant to this request to produce will negate the
possibility that she will object to their admission in evidence at trial.  It seems unlikely
that the accuracy of copies will be an issue since it is so easily proven.  The Court
does not understand his second reason, that the Florida Bar will sanction her for lying.
Nevertheless, the documents sought are within the scope of Rule 26(b)(1) and copies
should be produced.

-15-

V.      Plaintiff's Motion to Appoint Counsel.

        Mr. Weaver has asked the Court to appoint a lawyer to represent him in this

controversy because: (1) he has been unable to find a lawyer who will represent him;

(2) he does not have the money to hire a lawyer (for which he blames Mateer); (3) Mr.

Dinkins is a member of the Benevolent Protective Order of the Elks, Lodge # 286 and

attorneys are afraid of being black listed if they accept representation adverse to Mr.

Dinkins; (4) Mateer and Ms. Thompson took his money, have perjured themselves

and committed fraud on the Court; (5) Mr. Weaver needs a lawyer in order to prevail in

this lawsuit; and (6) the circumstance which these defendants have caused him to be

in is unfair.  The appointment of counsel in a civil case is not a constitutional right, it is

a privilege that is justified only by exceptional circumstances such as "where the facts

and the legal issues are so novel or complex as to require the assistance of a trained

practitioner." Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir. 1990).

        Here the Court finds the type and complexity of this case does not warrant the

appointment of counsel.  The quality of Mr. Weaver's pleadings and papers, while not

on a par with a trained attorney's work are adequate.  Mr. Weaver is in a position to

adequately investigate and prepare his case and he appears well versed in the facts.

This Court anticipates there will be many conflicts in the evidence in this case and

therefore, Mr. Weaver would benefit from the assistance of an attorney skilled in the

presentation of evidence and cross examination and that the defendants and Court

would likely benefit if Mr. Weaver was represented by a skilled attorney.  However,

this is true in most cases and in this controversy these are not sufficient reasons to appoint a lawyer to represent Mr. Weaver.

VI.    Conclusion.

        Now, for the above stated reasons it is adjudged that:

        1. The Motion to Compel Discovery of Defendant Lewis Dinkins (Doc. 100) is DENIED.

        2. The Motion to Compel Discovery of Defendant Mateer and Harbert (Doc. 102 is GRANTED IN PART.  Within 10 days from the rendition of this Order Mateer shall provide better answers to interrogatories 2, 8 and 10.  In all other respects, this motion is DENIED.

        3. The Motion to Compel Discovery of Defendant Renee Thompson (Doc. 103) is GRANTED IN PART.  Within 10 days from the rendition of this Order Ms. Thompson shall provide better answers to interrogatory 9 nd produce the documents requested in requests to produce numbered 1 through 4.  In all other respects, this motion is DENIED.

        4.    Plaintiff's Motion to Appoint Counsel (Doc. 160) is DENIED.

        IT IS SO ORDERED.

-17-

DONE AND ORDERED in Ocala, Florida, on November 3, 2011.


THOMAS B. SMITH
United States Magistrate Judge


Copies to:


Everette Weaver

All Counsel of Record