EVERETTE WEAVER,

        Plaintiff,

vs.                             Case No. 5:09-cv-514-Oc-34TBS

MATEER AND HARBERT, P.A., et al.,

        Defendants.

_____/

# O R D E R

**THIS CAUSE** is before the Court on the Joint Dispositive Motion for Summary

Judgment and Supporting Memorandum of Law of Defendants Mateer & Harbert, P.A., and

Renee Thompson (Doc. No. 178; Joint Motion), and the Amended & Dispositive Motion of

Defendant Dinkins for Summary Judgment (Doc. No. 179; Dinkins's Dispositive Motion, or

collectively, the Motions), both filed on November 21, 2011. Plaintiff filed a response in

opposition to both Motions on January 30, 2012. See Memorandum in Response to Mateer

and Harbert and Renee Thompson's Motion for Summary Judgment (Doc. No. 184;

Response to Joint Motion) and Memorandum in Response to Dinkins [sic] Motion for

Summary Judgment (Doc. No. 185; Response to Dinkins's Dispositive Motion, or collectively

the Responses).[1] Accordingly, the Motions are ripe for review.

---

[1] Because Plaintiff is proceeding pro se the Court has liberally construed his papers, giving them the benefit of the doubt at every turn. See Kroger v. Florida, 130 F. App'x 327, 332 (11th Cir. 2005) (citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)), cert. denied, 546 U.S. 1151 (2006).

## I. Procedural History

Plaintiff initiated this action by filing the Complaint (Doc. No. 1) on November 23, 2009, asserting various claims against Defendants Mateer & Harbert, P.A. (Mateer), Renee Thompson (Thompson), Jack Singbush (Singbush), AAA Reporting Inc. (AAA), Lewis Dinkins (Dinkins), and John Dorough (Dorough). See generally Complaint. Because the Complaint was a shotgun pleading and failed to comply with Rules 8 and 10, Federal Rules of Civil Procedure (Rule(s)), the Court struck it and directed Plaintiff to file an amended complaint. See Order (Doc. No. 3) at 2-5. Plaintiff filed the Amended Complaint (Doc. No. 4) on December 16, 2009, which prompted a series of motions to dismiss by Defendants, as well as motions to amend and amended (or proposed amended) complaints by Plaintiff.[2]

---

[2]    On April 12, 2010, Mateer and Thompson moved to dismiss the Amended Complaint. See Joint Motion to Dismiss Plaintiff's Amended Complaint by Defendants, Mateer & Harbert, P.A. and Renee Thompson, and Supporting Memorandum of Law (Doc. Nos. 11 & 12). Dinkins and Dorough followed on April 21, 2010 by filing their own motion to dismiss. See Motion to Dismiss (Doc. No. 21). On April 23, 2010, Plaintiff sought to amend his complaint to add a count against Singbush (Doc. No. 22), which the Honorable Gary R. Jones, United States Magistrate Judge, denied. See Order (Doc. No. 27). Plaintiff then filed a Motion for Leave to File Plaintiff's Second Amended Complaint (Doc. No. 37) on June 28, 2010. Before the Court granted him leave to do so, Plaintiff filed the Second Amended Complaint (Doc. No. 40) on July 26, 2010. Nevertheless, on September 3, 2010, the Magistrate Judge entered an Order (Doc. No. 42; September 3 Order) allowing Plaintiff to amend his complaint. See September 3 Order at 2. Mateer, Thompson, and Dinkins then filed motions to dismiss the Second Amended Complaint. See Motion of Defendant, Lewis E. Dinkins, to Dismiss Second Amended Complaint (Doc. No. 41); Joint Motion to Dismiss Plaintiff's Second Amended Complaint by Defendants, Mateer & Harbert, P.A. and Renee Thompson, and Supporting Memorandum of Law (Doc. No. 50).

On March 30, 2011, Plaintiff filed the Motion for Leave to File Plaintiff's Third Amended Complaint (Doc. No. 120). However, twelve days later, Plaintiff filed notices that he was withdrawing all claims against Singbush, Dorough, and AAA. See Notice of Dropping Party Jack Singbush as a Defendant and Withdrawal of Claims Directed to Him (Doc. No. 128); Notice of Dropping Party John Dorough as a Defendant and Withdrawal of Claims Directed to Him (Doc. No. 129); Notice of Dropping Party AAA Reporting Inc., as a Defendant and Withdrawal of Claims Directed to Them (Doc. No. 130). In addition, Plaintiff filed notices that he was withdrawing certain claims against Dinkins, Mateer, and Thompson. See Notice of Withdrawal of Claims for Fraudulent Misrepresentation and Conspiracy Against Party Lewis Dinkins (Doc. No. 131); Notice of Withdrawal of Claims for Breach of Fiduciary Duty, Fraudulent Misrepresentation and Unjust Enrichment Against Parties Mateer and Harbert and Renee Thompson (Doc. No. 132). In light of Plaintiff's Notices, the Court entered an Order on April 14, 2011, dismissing the claims against Singbush, Dorough, and AAA. See Order (Doc. No. 133; April 14 Order) at 2. Additionally, the Court denied Plaintiff's First Motion to File Third Amended Complaint without

The operative complaint is now the Third Amended Complaint (Doc. No. 162; Third Amended Complaint), as modified and entered pursuant to the Court's September 15 Order. See supra note 2. In the Third Amended Complaint, Plaintiff maintains the following claims: (1) breach of contract, breach of fiduciary duty, professional negligence, and unjust enrichment against Mateer; (2) breach of fiduciary duty and professional negligence against Thompson; and (3) negligence against Dinkins. Since the filing of the Third Amended Complaint, Defendants Mateer and Thompson filed a joint motion to dismiss that remains pending before the Court. See Joint Motion to Dismiss Plaintiff's Third Amended Complaint by Defendants, Mateer & Harbert, P.A. and Renee Thompson, and Supporting Memorandum of Law (Doc. No. 166; Joint Motion to Dismiss).

Mateer and Thompson filed the instant Joint Motion, along with multiple exhibits in support, which include: pleadings and orders from the case of Goldstone Homes, Inc. v.

---

prejudice because Plaintiff's Proposed Third Amended Complaint (Doc. No. 120-1) contained many of the claims that Plaintiff sought to withdraw in the Notices and set forth claims against Defendants that Plaintiff sought to dismiss. See April 14 Order at 2-3.

On the same day that the Court entered the April 14 Order, Plaintiff filed the Motion for Leave to Amend in Light of Dropping Three Defendants (Doc. No. 134; Second Motion to File Third Amended Complaint) in which he sought to withdraw many of the claims asserted against the remaining Defendants as well as assert new claims. See generally Second Motion to File Third Amended Complaint; [Second] Proposed Third Amended Complaint (Doc. No. 134-1). The Honorable James R. Klindt, United States Magistrate Judge, denied Plaintiff's Second Motion to File Third Amended Complaint. See Order (Doc. No. 149) at 14. In Plaintiff's next motion to amend, Plaintiff sought to withdraw many of his claims against the remaining Defendants, Mateer, Thompson, and Dinkins, and eliminate unnecessary factual allegations as well as clarify the remaining allegations. See Motion for Leave to File Plaintiff's Third Amended Complaint (Doc. No. 153; Motion to Amend); compare Second Amended Complaint with Third Proposed Third Amended Complaint. Plaintiff also sought to assert new claims against Thompson, Mateer, and Dinkins. Compare Second Amended Complaint at 9-17, 26-28 with Third Proposed Third Amended Complaint at 10-28. On September 15, 2011, the Court entered an Order (Doc. No. 161; September 15 Order) granting in part, and denying in part, the Motion to Amend. See September 15 Order at 9-26. The Court granted the Motion to Amend to the extent that it withdrew claims, eliminated and/or clarified factual allegations, but denied the Motion to Amend to the extent that Plaintiff sought to add any new claims. See id. Most recently, on May 2, 2012, Plaintiff filed his Motion for Leave to File Plaintiff's Fourth Amended Complaint (Doc. No. 191), which remains pending before the Court.

<u>Southway Building Corp.</u>, Case No. 2007-CA-000488, in the Circuit Court of the Fifth Judicial Circuit, in and for Marion County, Florida, <u>see</u> Exhibits A-K to the Joint Motion (Doc. Nos. 178-1-178-11), an administrative order from the Fifth Judicial Circuit of Florida, <u>see</u> Exhibit L to the Joint Motion (Doc. No. 178-12), and an affidavit from Richard B. Schwamm (Schwamm). <u>See</u> Exhibit M to the Joint Motion (Doc. No. 178-13; Schwamm Aff.). In support of Dinkins's Dispositive Motion, Dinkins filed his own affidavit. <u>See</u> Affidavit of Lewis E. Dinkins (Doc. No. 179-1; Dinkins Aff.).

Plaintiff attached the following to his Response to the Joint Motion: Exhibit A, Attorney Work Product for Mediation Purposes, (Mediation Statement); Exhibit B, E-mail from Mr. Wells to Plaintiff,[3] Exhibit C, E-mail chain between Mr. Wells's legal assistant, Mr. Wells, and Plaintiff; Exhibit D, Plaintiff's First Set of Interrogatories to AAA; Exhibit E, AAA Reporting, Inc.'s Notice of Serving Answers to First Set of Interrogatories; Exhibit F, Plaintiff's Second Set of Interrogatories to AAA; Exhibit G, AAA Reporting, Inc.'s Notice of Serving Supplemental Answer to Interrogatory No. 24 of First Set of Interrogatories and Answers to Second Set of Interrogatories; Exhibit H, Plaintiff's First Set of Interrogatories to Thompson; Exhibit I, Renee Thompson's Answers to Interrogatories; Exhibit J, AAA's Notice of Service of Interrogatory to Plaintiff; and Exhibit K, Letter from the U.S. Attorney's

---

[3]     Defendants have not moved to strike any of Plaintiff's exhibits. However, the Court notes that "[t]o be admissible in support of or in opposition to a motion for summary judgment, a document must be authenticated by and attached to an affidavit," and that affidavit must comply with the requirements of Rule 56(c)(4), and "the affiant must be a person through whom the exhibits could be admitted into evidence." <u>Saunders v. Emory Healthcare, Inc.</u>, 360 F. App'x 110, 113 (11th Cir. 2010) (citing earlier version of Rule 56). Further, the Court may not consider inadmissible hearsay on a motion for summary judgment unless the statement could be reduced to admissible evidence at trial. <u>See</u> <u>Macuba v. DeBoer</u>, 193 F.3d 1316, 1322-23 (11th Cir. 1999).

Office forwarding Plaintiff's complaint to the FBI.

Plaintiff also submitted the following exhibits in his Response to Dinkins's Dispositive Motion: Exhibit A, Letter from Dinkins to Judge Singbush; Exhibit B, Order to Set Status Conference; Exhibit C, Plaintiff's letter to the FBI; Exhibit D, Order from the Marion County License Review Board; Exhibit E, Letter of Reprimand to Peter Zarcone; Exhibit F, Southway Building Corp. Work Estimate for Jens and Alicia Thorne; Exhibit G, Citation dated March 27, 2007 from Marion County to Peter Zarcone dba Southway Building Corp.; Exhibit H, Printout from Marion County Board of County Commissioners; Exhibit I, Answers of Defendant, Lewis Dinkins to Interrogatories from Plaintiff; Exhibit J, Answers of Defendant, John R. Dorough, to Plaintiff's Interrogatories; Exhibit K, Demand Letter from Dinkins on behalf of Southway Building Corp. dated December 6, 2006; Exhibit L, Letter from Assistant State Attorney to Plaintiff. As the issues are fully briefed and the supporting materials have been filed, the Motions are ripe for resolution.

## II.    Standard of Review

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials."[4]  Rule 56(c)(1)(A).[5]  An issue is

genuine when the evidence is such that a reasonable jury could return a verdict in favor of

the nonmovant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)

(quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere

scintilla of evidence in support of the non-moving party's position is insufficient to defeat a

motion for summary judgment."  Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d

1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252

(1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the

court, by reference to the record, that there are no genuine issues of material fact to be

---

[4]     Unsworn and conclusory statements from litigants are not competent evidence and
"should not be consider[ed] in determining the propriety of summary judgment."  West v. Higgins, 346
F. App'x 423, 425-26 (11th Cir. 2009) (quoting Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980))
(alteration in original); cf. McCaskill v. Ray, 279 F. App'x 913, 915 (11th Cir. 2008) (litigant's unsworn
allegations not admissible on motion for summary judgment); Nieves v. Univ. of Puerto Rico, 7 F.3d 270,
276 n.9 (1st Cir. 1993) ("Factual assertions by counsel in motion papers, memoranda, briefs, or other
such 'self-serving' documents, are generally insufficient to establish the existence of a genuine issue of
material fact at summary judgment.").  "[C]onclusory statements of ultimate facts . . . are not considered
competent evidence to defeat summary judgment."  Nisbet v. George, No. 1:05-cv-570-WKW, 2006 WL
2345884, at *3 (M.D. Ala. Aug. 11, 2006) (omission in original) (citation omitted).  Likewise, "[a]
nonmoving party, opposing a motion for summary judgment supported by affidavits cannot meet the
burden of coming forth with relevant competent evidence by simply relying on legal conclusions or
evidence which would be inadmissible at trial."  Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

[5]     Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding
summary-judgment motions."  Rule 56 advisory committee's note 2010 Amendments.

The standard for granting summary judgment remains unchanged.  The language of
subdivision (a) continues to require that there be no genuine dispute as to any material
fact and that the movant be entitled to judgment as a matter of law.  The amendments
will not affect continuing development of the decisional law construing and applying
these phrases.

Id.  Thus, case law construing the former Rule 56 standard of review remains viable and is applicable
here.

determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.  In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III.    Background Facts[6]

This litigation centers around the state court case of Goldstone Homes, Inc. v. Southway Building Corp., Case No. 2007-CA-000488, in the Circuit Court of the Fifth Judicial Circuit, in and for Marion County, Florida (State Action).[7]  Plaintiff initiated the State

---

[6]     Because this case is before the Court on the Defendants' Motions seeking summary judgment, the facts recited herein and all reasonable inferences therefrom have been viewed in a light most favorable to the evidence presented by Plaintiff.  See Clark, 929 F.2d at 608.

[7]     Mateer and Thompson request that the Court take judicial notice of certain documents which they attach as exhibits to the Joint Motion.  See Joint Motion at 7-8.  Rule 201(b) of the Federal Rules of Evidence allows a court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Court documents from a prior proceeding are matters of public record and "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned," and therefore judicial notice of them is appropriate.  Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010).

Action on February 23, 2007, when he filed a complaint pro se on behalf of Goldstone Homes, Inc. (Goldstone) against Southway Building Corp. (Southway), seeking the return of a construction deposit. See Complaint (Doc. No. 178-1; State Complaint). In addition to filing suit, Plaintiff recorded a claim of lien on the personal residence of Southway's president, Peter Zarcone. See Claim of Lien (Doc. No. 178-2; Lien). Southway, through its attorney, Dinkins, answered the State Complaint and filed a counterclaim against both Goldstone and Plaintiff, who was added as a counterclaim defendant. See Answer to Complaint (Doc. No. 178-3; Counterclaim). Southway also filed a motion to dismiss the State Complaint, a motion to strike, and a motion for summary judgment, as well as requests

---

However, a court takes judicial notice of such documents to determine that pleadings were filed, admissions were made, the court took certain actions, etc.; a court taking judicial notice does not consider any findings of fact contained within the court order(s). United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) ("[A] court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation.") (internal citations omitted). Mateer and Thompson request that the Court take judicial notice of the following: Plaintiff's original complaint in the State Action, Exhibit A to the Joint Motion (Doc. No. 178-1); a claim of lien, Exhibit B to the Joint Motion (Doc. No. 178-2); Southway Building Corporation's Answer to the State Complaint, Exhibit C to the Joint Motion (Doc. No. 178-3); the state court's Order Granting Motion to Dismiss, Exhibit D to the Joint Motion (Doc. No. 178-4); Order Granting in Part Motions of Southway Building Corporation, Peter J. Zarcone, Jr. and Karen S. Zarcone, Exhibit E (Doc. No. 178-5); the state court docket, Exhibit F to the Joint Motion (Doc. No. 178-6); the transcript for a state court hearing held on August 9, 2007, Exhibit G to the Joint Motion (Doc. No. 178-7); the transcript for a hearing on September 10, 2007, Exhibit H to the Joint Motion (Doc. No. 178-8); Agreed Motion to Withdraw as Counsel For Goldstone Homes and Everette Weaver with Incorporated Memorandum of Law, Exhibit I to the Joint Motion (Doc. No. 178-9); Order Granting Agreed Motion to Withdraw as Counsel for Goldstone Homes, Inc., Exhibit J to the Joint Motion (Doc. No. 178-10); and Administrative Order No. A-2010-33 in the Circuit Court for the Fifth Judicial Circuit of the State of Florida, Exhibit L to the Joint Motion (Doc. No. 178-12). In his Response to the Joint Motion, Plaintiff does not object to Defendants' request for the Court to take judicial notice or address the issue at all. Rather, Plaintiff cites to the September 10 transcript in his Third Amended Complaint as well as a lis pendens and a motion filed by Defendant Dinkins in the State Action. See Complaint at 14, 24-25. Plaintiff also cites an order from the State Action in his Response to Dinkins's Dispositive Motion. See Response to Dinkins's Dispositive Motion at 5. Because the state court docket and the pleadings filed therein are public records, and are therefore capable of ready and accurate determination, the Court takes judicial notice of the docket and those pleadings filed in the court record by all parties, including Plaintiff. See Universal Express, Inc. v. SEC, 177 F. App'x 52, 53 (11th Cir. 2006); see also Ubuy Holdings, Inc. v. Gladstone, 340 F. Supp. 2d 1343, 1346 (S.D. Fla. 2004).

for admissions on March 12, 2007. <u>See</u> Fifth Judicial Circuit Docket (Doc. No. 178-6; State Docket). On the same day, Southway filed a notice of lis pendens against Plaintiff's property. <u>See</u> Notice of Lis Pendens, Exhibit F to Third Amended Complaint (Doc. No. 162-2; Lis Pendens). On March 13, 2007, a process server filed an affidavit of service, swearing that Plaintiff had been individually served with the above documents filed by Southway. <u>See</u> Affidavit of Service, Exhibit 1 to Affidavit of Lewis E. Dinkins (Doc. No. 179-1; Aff. of Service).[8]

Goldstone filed an answer to the Counterclaim on March 27, 2007. <u>See</u> State Docket. On that same day, the state court dismissed the State Complaint because Goldstone, as a corporation, had to be represented by an attorney, but the state court granted leave for Goldstone to refile within 30 days if the complaint was signed by a licensed attorney. <u>See</u> Order Granting Motion to Dismiss (Doc. No. 178-4). On April 2, 2007, Southway moved to strike Goldstone's answer. <u>See</u> State Docket. On the following day, Southway moved for default against Plaintiff and the default was entered.[9] <u>See</u> <u>id.</u> On April 19, 2007, the state court granted Southway's motion to strike Goldstone's answer to the Counterclaim, and gave Goldstone leave to file an amended answer through a licensed Florida attorney. <u>See</u> <u>id.</u> Shortly thereafter, on April 24, 2007, Southway moved for judgment on the pleadings. <u>See</u> <u>id.</u>

---

[8]     Plaintiff disputes whether proper service was made upon him because he alleges he never received a summons. In his Affidavit, Dinkins contends that he was unaware that a summons may not have been served on Plaintiff along with the Counterclaim until Plaintiff filed the instant litigation. <u>See</u> Dinkins Aff. at 2.

[9]     On May 10, 2007, the state court entered an order vacating the default as to the Counterclaim. <u>See</u> State Docket.

By May 3, 2007, Goldstone had not filed an amended complaint, Plaintiff had not filed an answer to the Counterclaim, and neither Goldstone nor Plaintiff had responded to Southway's requests for admissions. See State Docket; Order Granting in Part Motions of Southway Building Corporation, Peter J. Zarcone, Jr. and Karen S. Zarcone (Doc. No. 178-5; May 3 Order). Accordingly, the state court determined that the requests for admissions were deemed admitted by Goldstone and Plaintiff, and granted Southway's motions for summary judgment and judgment on the pleadings, reserving jurisdiction to assess damages and award attorney's fees. See id. The state court also barred Goldstone from filing an amended complaint, and struck Plaintiff's lien against the Zarcone property as void and without merit. See id. at 2.

Following the May 3 Order, Plaintiff engaged the Mateer firm to represent him and Goldstone in the State Action. See Engagement Agreement between Mateer Harbert, P.A. and Goldstone Homes, Inc. and Everette Weaver, Exhibit A to the Third Amended Complaint (Doc. No. 162-1; Engagement Agreement).[10] On May 17, 2007, Thompson filed a notice of

---

[10]     The length and scope of the agreement between Plaintiff and Mateer is the subject of dispute. Plaintiff alleges that he hired Mateer on April 15, 2007, but they did not draw up the agreement until May 17, 2007, after they realized that they could not have won the case because of a relationship between Dinkins and the state court judge, Singbush. See Third Amended Complaint at 2-3. Plaintiff further contends that he retained Mateer's services both to challenge a judgment against him and to obtain a judgment against Zarcone, doing business as Southway. See id. at 2 (stating that Thompson told Plaintiff she would "further seek a judgment against Southway for monies owed to Plaintiff"). These allegations are not supported by the record and, in fact, are contradicted by the Engagement Agreement. When the allegations in a pleading conflict with the attached exhibits, the exhibits control. See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007). The Engagement Agreement, attached as Exhibit A to the Third Amended Complaint, states:

    1.     Description of Services and Scope of Engagement. Our firm agrees, on the terms set forth in this letter, to represent and counsel you in connection with matters concerning, and filed against you and Goldstone, Inc., by Southway Building Corporation, Peter and Karen Zarcone in Case No. 07-488-CA-G in Marion County, Florida. Specifically, we will begin our representation by filing a motion for rehearing on

appearance and a motion for rehearing of the May 3 Order, which the state court denied on July 24, 2007. See State Docket. Thompson then filed an answer on Plaintiff's behalf on August 9, 2007. See Counter-Defendant Everett [sic] Weaver's Answer And Affirmative Defenses to Counter Complaint, Exhibit 2 to Dinkins Aff. (Doc. No. 179-1). On that same day, the state court held a trial on the issue of damages and court costs. See State Docket; Transcript of August 9, 2007 (Doc. No. 178-7; August 9 Transcript).[11] Because the trial was taking longer than the time allotted on August 9, see August 9 Transcript at 95-100, the court held a second hearing on September 10, 2007. See Transcript of September 10, 2007 (Doc. No. 178-8; September 10 Transcript). During the September 10 hearing, certain

_____

the summary judgments granted against you and Goldstone, Inc. Our representation in this matter shall be considered to have begun as of Wednesday, May 16, 2007 on an hourly basis as specified in paragraph IV, and will continue until either you or we terminate our attorney-client relationship. You acknowledge that our firm's estimates concerning the likely outcome of your matter or regarding the cost of representation in any contested matter, adversary proceeding or additional matter are not guarantees of such final outcome or cost.

Engagement Agreement at 1-2. While Plaintiff alleges in his Third Amended Complaint that Mateer and Thompson altered the terms of the contract, see Third Amended Complaint at 2-3, he has presented no record evidence to support such an allegation. Plaintiff filed no deposition or affidavit in this case and relies only on his Third Amended Complaint with respect to the scope of the contract, which is not sufficient to create a material fact to avoid summary judgment. See Jeffrey v. Sarasota White Sox, 64 F.3d 590, 593-94 (11th Cir. 1995) (stating that the non-moving party must go beyond pleadings to demonstrate a genuine issue of material fact for trial).

[11]     At the outset of the August 9 hearing, Thompson sought clarification on whether the trial on damages was proceeding against both Goldstone and Plaintiff. See August 9 Transcript at 4-6. Thompson had argued in the motion for rehearing that Plaintiff did not receive proper notice of the summary judgment motion. See id. at 11. However, given that the state court had denied the motion for rehearing, the state court found that it was the law of the case that Plaintiff and Goldstone had been served. See id. The state court had set aside Plaintiff's default after the May 3 Order, and thus, Thompson attempted to argue that the effect of that action should have been to allow Plaintiff to defend on the question of liability. Id. at 6-12. In rejecting that argument, the court pointed out that even after the default had been set aside, Plaintiff did not file a timely answer. Id. at 14. It then stated, "any argument seems to me to be without merit, because and in point of fact, what's happened is, as best I can discern here, is that Mr. Weaver invoked jurisdiction of the Court and then declined to play by the rules." Id. The state court then proceeded to a hearing on the matter of damages. See generally id. at 15-100.

discussions were held off the record before Plaintiff entered the courtroom.[12]  See

September 7 Transcript at 2-3.  When the parties came back on the record, the state court

determined that the issue of damages would not be concluded at that time, and explained:

> So that there's no misapprehension by any party, liability and each and every element there of liability for damages has been established by the pleadings, the requests for admissions and other matters of record.  As a proximate cause of the factual allegations that have been deemed admitted or have been otherwise proved, prior to the commencement of our first hearing, the sole issue that was left to be determined by the Court was how much the damage was, not if there was damage but how much, in terms of dollar amount.
>
> That occurred before counsel of record appeared on behalf of you, sir, and Mr. Dinkins has done his job to the point where the only issue that is necessary for the Court to determine is how much do you owe.  So in fairness to Mr. Dinkins and his client, given that new witnesses have been subpoenaed, the Court wants everybody to have an opportunity to have their day in court if that becomes appropriate, if that's necessary to do.

September 10 Transcript at 3-4.  After discussing the proper procedure for amending the

_____

[12]     Plaintiff argues that he was not present at the hearing and that Defendants and the court reporter conspired to make it appear that he was there when he was not.  See Response to Dinkins's Dispositive Motion at 9 ("[A]ll the defendants in this case got together and fix [sic] the record to protect themselves and that record have [sic] plaintiff responding to Judge Singbush on September 10, 2007 even though plaintiff never entered the courtroom . . . .").  Plaintiff has submitted sworn interrogatories from the court reporter in which she states that the transcripts are accurate and have not been altered, as well as that she personally remembers Plaintiff's presence in the courtroom.  See Exhibits D-G to the Response to the Joint Motion.  Plaintiff has filed no affidavit, interrogatory, or other record evidence to support his claim that he was not present in the courtroom that day.  Indeed, the only record evidence before the Court in this matter, besides the transcripts themselves, are the sworn interrogatories and responses of the court reporter.  See Exhibits D-G of the Response to the Joint Motion.  The court reporter, on behalf of AAA Reporting, Inc., responded to Plaintiff's second set of interrogatories:

> Mr. Weaver was only present after a lengthy break when the Judge began to speak on Page 3 of the transcript of the hearing of September 10, 2007.  After that Mr. Weaver was present through the end of the transcript.  The previous response contained in Answer to Interrogatory No. 9, of the First Set of Interrogatories, is accurate and the transcript of September 10, 2007, accurately reflects the proceedings before Judge Singbush on that date.

See Exhibit G of the Response to the Joint Motion.  Although the Court views the evidence in the light most favorable to Plaintiff, the record evidence discloses that Plaintiff entered the hearing as indicated in the response and on the transcript.

Counterclaim to include punitive damages, the state court continued:

> Now, sir, you understand that what we're talking about here is, is - - it has already been established that a - - that a civil wrong has been - - has been committed and that there has been damage that was directly and proximately caused by that, those - - by the wrongful conduct, and that the only matter that we're going to discuss is how much damage is attributable to you, the corporation, how much you're going to have to pay.

Id. at 7. Thereafter, the hearing was continued to allow the parties to attend mediation and to allow the state court to resolve issues with Goldstone and Plaintiff's proposed witnesses and Southway's proposed amendment to the Counterclaim. See id. at 7-10; State Docket.

On September 11, 2007, Southway moved to exclude the testimony of witnesses that Goldstone and Plaintiff sought to introduce at the September 10 hearing, arguing that the witnesses had not been disclosed until earlier that day. See Motion to Exclude Testimony of Witnesses, Exhibit G to the Third Amended Complaint (Doc. No. 162-2). Southway also filed a motion for leave to amend its Counterclaim to conform to evidence of punitive damages. See Motion for Leave to Amend Pleadings to Conform to Evidence as to Punitive Damages, Exhibit H to the Third Amended Complaint (Doc. No. 162-2).

Ultimately, on October 29, 2007, the parties in the State Action attended a mediation which resulted in an impasse. See State Docket. Following the mediation, on November 9, 2007, Thompson filed an agreed motion to withdraw as counsel for Goldstone and Plaintiff. See Agreed Motion to Withdraw as Counsel for Goldstone Homes, Inc. and Everette Weaver with Incorporated Memorandum of Law (Doc. No. 178-9; Agreed Motion). Goldstone and Plaintiff filed a response to the Southway's motion to amend on November 13, 2007. See State Docket. The state court granted the Agreed Motion on November 20,

-13-

2007, see Order Granting Agreed Motion to Withdraw as Counsel for Goldstone Homes, Inc. and Everette Weaver (Doc. No. 178-10), and also granted leave to amend the pleadings to conform to the evidence as to punitive damages. See Order Granting Leave to Amend Pleadings to Conform to Evidence as to Punitive Damages, Exhibit I to the Third Amended Complaint (Doc. No. 162-2). Southway then filed a motion for default as to the amended counterclaim on January 8, 2008, which the state court granted on the same day. See State Docket.

Subsequently, counsel, David Wells, entered an appearance for Goldstone and Plaintiff on January 17, 2008 and moved for rehearing. See id. The state court granted the motion for rehearing and Goldstone filed an answer to the amended Counterclaim. See id. Plaintiff then filed a motion to dismiss the amended Counterclaim or alternatively a motion for reconsideration on March 31, 2008, which was denied on April 18, 2008. See id. To date, the State Action has never proceeded to final judgment.[13] See id.

## IV. Summary of the Arguments

Because all the counts against Mateer and Thompson are predicated on the same

---

[13] In his pleadings, Plaintiff alleges that he had a default judgment of one million dollars entered against him in the State Action. Although the State Docket shows that a default was entered against Plaintiff, the default judgment was vacated. Plaintiff may also be referring to the grant of summary judgment against him and Goldstone. See May 3 Order. However, the Court has not been provided with any state court judgments and could not find any entry on the State Docket indicating a judgment in any amount had been entered against Plaintiff. See State Docket; see also Dinkins Aff. at 3. Plaintiff also alleges that, because of the Lis Pendens filed against him, his house went into foreclosure, he was unable to obtain the full value of his house at the foreclosure sale, and he ultimately had a deficiency judgment entered against him. Third Amended Complaint at 3, 12-13, 15, 18, 26. The only evidence in the record regarding the foreclosure is a certificate of sale for $100.00 filed on August 17, 2010 in the matter of GMAC Mortgage, LLC v. Everette Weaver, Case No. 42-2008-CA-6629, in the Circuit Court of the Fifth Judicial Circuit, in and for Marion County, Florida. Beyond the allegations of his Third Amended Complaint, Plaintiff has not provided the Court with any evidence regarding the value of the property, prior attempts to sell it, or the deficiency judgment.

allegations relating to Thompson's representation of Plaintiff in the State Action, Mateer and Thompson address all the counts together as a single claim for legal malpractice. <u>See generally</u> Joint Motion. They argue that the Court should enter summary judgment in their favor as to all counts because Plaintiff's claims are either completely without factual support or contradicted by the record. <u>See</u> <u>id.</u> at 9-12. Specifically, Mateer and Thompson contend that no final judgment has been entered against Plaintiff, as the records in the State Action demonstrate. <u>See</u> <u>id.</u> at 9. Further, they contend that the record evidence is inconsistent with Plaintiff's Third Amended Complaint with respect to the extent of the attorney-client relationship, which the Engagement Agreement shows does not include the filing of a counterclaim by Mateer and Thompson on Plaintiff's behalf. <u>See</u> <u>id.</u> at 10.

Additionally, Mateer and Thompson contend that Plaintiff's claims are not ripe because no final judgment has been entered against him, rendering any damages speculative until the conclusion of the underlying action. <u>See</u> <u>id.</u> at 12. They further assert that the lack of a judgment also prevents recovery by Plaintiff because even if the claims were ripe, Plaintiff cannot establish that the legal representation caused Plaintiff any damages. <u>See</u> <u>id.</u> at 12-18. With respect to the alleged failure to obtain a judgment against Southway and Zarcone, Mateer and Thompson argue that they were barred from filing a complaint due to Plaintiff's conduct prior to their involvement in the case, and even if they were not, Plaintiff has not proven that such a claim would have been successful. <u>See</u> <u>id.</u> at 16. Morever, they contend that the alleged failure to challenge the Lis Pendens could not have been the proximate cause of the foreclosure on Plaintiff's house because subsequent counsel had an opportunity to challenge it, and the Lis Pendens expired over two years

before Plaintiff's house was sold.  See id. at 16-18.  Lastly, Defendants Mateer and Thompson argue that any remaining allegations are not actionable because they either qualify as good faith, tactical decisions, are not supported by any evidence, and/or were not actions Mateer and Thompson were obligated to take,[14] or were not likely to have succeeded.[15]  See id. at 18-22.

Defendant Dinkins echoes Mateer and Thompson's arguments that Plaintiff's claims are not ripe and Plaintiff has suffered no damages.  See Dinkins's Dispositive Motion at 2-8, 14-15.  As the attorney of the opposing party in the State Action, however, Dinkins also argues that he had no duty to Plaintiff.  See id. at 11-14.  Additionally, Dinkins contends that he is absolutely immune from suit for actions related to a judicial proceeding under Florida's litigation privilege.  See id. at 15-17.

Plaintiff opposes both Motions.  Plaintiff's Responses largely consist of arguments that all parties conspired to defraud and/or extort money from him and alter the court records.[16]  See generally Response to Joint Motion; Response to Dinkins's Dispositive Motion.  In his Response, Plaintiff lists fifteen questions of fact that he argues exist in

---

[14]     As examples of such actions, Mateer and Thompson list the alleged failure to disclose a relationship between the state court and Dinkins, to notify Plaintiff of potential insurance coverage for Southway or Zarcone, or file a claim against such insurance, and turn over information to the authorities regarding perjury and/or the threatening of witnesses. See Joint Motion at 20.

[15]     Specifically, Mateer and Thompson refer to Plaintiff's argument that they should have challenged the jurisdiction of the state court because a summons was never issued and served on Plaintiff.  They point to the state court's finding that Plaintiff had submitted himself to the jurisdiction of the court in the August 9 hearing. See Joint Motion at 21-22.

[16]     Plaintiff's Responses also contained information which is irrelevant to the Motions, even when the Court construes his pleadings liberally.  For example, Plaintiff quotes the philosopher Friedrich Nietzsche and references a book called "the top five regrets of the dying." See Response to Joint Motion at 15-17.  Accordingly, the Court will disregard these portions of the Responses.

Response to Joint Motion, such as whether Plaintiff paid for services Mateer and Thompson never intended to perform and whether those services billed were actually performed.[17] <u>See</u> Response to Joint Motion at 2-3. He also lists fifteen similar questions of fact in the Response to Dinkins's Dispositive Motion, such as whether Dinkins "filed a bogus lis pendens" and whether Plaintiff was ever actually served with a complaint. <u>See</u> Dinkins's Dispositive Motion at 2-3. Plaintiff contends that Dinkins tried to extort money from him, conspired to fix the State Action and should be prosecuted. <u>See</u> Response to Dinkins's Dispositive Motion at 1, 3-6, 9-14. Based on these arguments Plaintiff asserts that questions of fact exist, and thus, summary judgment should be denied.

## V.    Ripeness

Mateer, Thompson and Dinkins first argue that this case is not ripe because no judgment has been entered in the State Action, and Plaintiff has therefore not suffered an injury. Under Florida law, a cause of action for malpractice that arises out of litigation does not accrue until the redressable harm is established, i.e., until final judgment is rendered. <u>See</u> <u>Silvestrone v. Edell</u>, 721 So. 2d 1173, 1175 (Fla. 1998) (holding that the statute of limitations does not begin to run in legal malpractice cases that proceed to final judgment until the final judgment becomes final). In light of this authority, Defendants argue that final judgment has not been entered, and therefore the action should be dismissed for a lack of ripeness. However, the Eleventh Circuit has explained that Florida law on this subject does

---

[17]    The Court notes that Plaintiff also requests that the Court forward the case to the U.S. Attorney's office for prosecution. <u>See</u> Response to the Joint Motion at 19. Plaintiff also made this request via a separate motion. <u>See</u> Motion for Referral to the United States Attorney (Doc. No. 198; Motion for Referral). The Court addressed this issue separately in an Order denying the Motion for Referral. <u>See</u> Order (Doc. No. 209).

not establish a fine-line rule requiring a judgment before all malpractice cases may be initiated.  Porter v. Ogden, Newell & Welch, 241 F.3d 1334, 1339 (11th Cir. 2001).

Instead, the law in Florida is that "a malpractice action accrues 'when it is reasonably clear that the client has actually suffered some damage from legal advice or services.'" Id. (internal quotation omitted); see also Tech. Packaging, Inc. v. Hatchett, 992 So. 2d 309, 312 (Fla. Dist. Ct. App. 2008) ("The test for determining when a cause of action for attorney malpractice arises remains when the existence of redressable harm has been established."). In Porter, a trustee sued on behalf of a trust, alleging that the settlor's attorneys had incorrectly drafted the trust so as to subject it to taxation.  See id. at 1336-38.  The Eleventh Circuit held that the district court in Porter erroneously dismissed the case as premature because the trustees had taken steps to cure the problem and suffered actual harm.  Id. at 1339-40.

In this case, Plaintiff has alleged injury in the form of a judgment and a lis pendens preventing the sale of his property for its full value.  This case represents a unique situation in which a judgment on damages was never obtained, and the reason for such failure is not apparent from the record.  Despite this failure, the State Action has been administratively closed.  See Dinkins Aff. at 4; State Docket.  The instant matter is further complicated because, as discussed below, Plaintiff's claims of harm are contradicted by the record or unsubstantiated, but whatever the harm as alleged, it has occurred.  Accordingly, there is

nothing to be gained by waiting for a judgment that may never enter[18] and Plaintiff's claims are ripe for judicial review.

## VI. Breach of Contract against Mateer[19]

To recover for a breach of contract, Plaintiff must show "(1) a valid contract; (2) a material breach; and (3) damages." Beck v. Lazard Freres & Co., 175 F.3d 913, 914 (11th Cir. 1999) (citing Abruzzo v. Haller, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). If he satisfies these elements, Plaintiff's damages will be limited to those damages that "were the proximate result of the breach." Chipman v. Chonin, 597 So. 2d 363, 364 (Fla. 3d DCA 1992).

Here the parties agree that a valid contract existed between Mateer and Plaintiff, the Engagement Agreement, although they dispute the scope of that contract. In his Third Amended Complaint, Plaintiff alleges that Mateer breached the Engagement Agreement

---

[18]    The Court notes that under Florida law, if a claim is premature, the proper remedy would be to stay or abate the action to allow the claim to mature. See Burgess v. Lippman, 929 So. 2d 1097 (Fla. 4th DCA 2006). In Burgess, the Fourth District Court of Appeal reversed the denial of a motion to stay the action because it held that the resolution of an underlying state action would determine whether the defendants' actions in drafting an agreement had caused any damages. Id. 1099. In contrast, here, the alleged harm has already occurred. Although the state court has not determined the final amount of damages Plaintiff owes in the State Action, such a determination may never be made given the procedural posture of the case. Moreover, the harm Plaintiff alleges to have suffered, which includes not only an alleged judgment entered against him, but also the loss of his home (through a default on his mortgage payments, an inability to sell his home due to the Lis Pendens, and a subsequent deficiency judgment), has occurred. See Jones v. Law Firm of Hill & Ponton, 223 F. Supp. 2d 1284, 1287 (M.D. Fla. 2002) (holding that, although the Florida Supreme Court "has held that in a litigation context, 'a malpractice case is hypothetical and damages are speculative until the underlying action is concluded with an adverse outcome to the client' . . . Florida cases should not be read to require every party who suffers a loss and attributes that loss to legal malpractice to obtain a final determination of the underlying case before asserting a claim for legal malpractice.").

[19]    Plaintiff refers to both Mateer and Thompson in his allegations; however, the Court denied Plaintiff's Motion to Amend to the extent Plaintiff sought to include new claims, including a breach of contract claim against Thompson. See September 15 Order. Thus, the Court will address only the pending claim against Mateer.

-19-

because the law firm rendered incompetent service, and failed to do fourteen other listed actions. <u>See</u> Third Amended Complaint at 11-12. However, as to the allegation of incompetent service, Plaintiff has not provided the Court with any evidence suggesting that Mateer's services were in fact incompetent.[20] Mateer, on the other hand, has provided the affidavit of an attorney, Schwamm, who has practiced law in Florida for twenty years. <u>See</u> Schwamm Aff.. Plaintiff has not objected to Schwamm's qualifications or his ability to express opinions on the relevant issues. Schwamm opines that "the actions of Mateer and Thompson did not depart from the expected degree and care of conduct expected of counsel in similar matters." <u>See id.</u> at 3. That testimony is the sole evidence before the Court on the issue of the competence of Mateer's representation. Further, as to the fourteen actions Plaintiff identifies, he has presented no evidence to suggest that Mateer agreed to perform those or that the alleged failure to do so caused harm. Indeed, a review of the Engagement Agreement supports a contrary conclusion. Moreover, Plaintiff points to no evidence that supports a conclusion that, in his contract with Mateer, the firm agreed to challenge the Lis Pendens filed against his property, much less that the Lis Pendens could have been successfully challenged by Mateer at the time of the engagement. <u>See</u> <u>Chipman</u>,

---

[20]    The Court notes that Plaintiff requests an opportunity for discovery and/or to amend the complaint if the Court is inclined to grant summary judgment. <u>See</u> Response to Joint Motion at 18. However, the Court declines to do so as the deadline for discovery, which was extended at Plaintiff's request, passed over a year ago. <u>See</u> Order (Doc. No. 150) denying Plaintiff's Second Motion to Extend Discovery Deadline. Once the Court establishes a schedule for discovery, it "may be modified only for good cause and with the judge's consent." Rule 16(b)(4). "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" <u>Sosa v. Airprint Systems, Inc.</u>, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note). Plaintiff has not demonstrated good cause to permit any additional discovery. Further, Plaintiff has been given multiple opportunities to amend his complaint, as detailed above, and this action has been pending for almost three years. Plaintiff has had ample opportunity to seek and obtain any desired discovery and present his claims.

597 So. 2d at 364 (affirming summary judgment on legal malpractice and breach of contract claims where the record was "devoid of any evidence which would support" the plaintiff's claim that the defendant's withdrawal as counsel caused him to lose money damages in an age discrimination case). Similarly, with respect to his claims regarding the failure to contest service, the record reflects that Mateer, through Thompson, did raise the issue of service, and the state court rejected that argument as being without merit.[21] See August 9 Transcript at 4-14. Thus, Plaintiff has failed to present evidence suggesting that Mateer breached its Engagement Agreement on that basis. Because Plaintiff has not created a genuine issue of material fact with respect to any of his claims that Mateer breached its contract by providing incompetent service or failing to provide promised services, Matter is entitled to summary judgment.

### VII.    Legal Malpractice Claims against Mateer and Thompson

Mateer and Thompson argue that Plaintiff's claims, including those for breach of fiduciary duty and negligence, all equate to a claim of legal malpractice because they are based on Mateer and Thompson's representation of Plaintiff during the State Action. See Joint Motion at 5, 12, 18. However, professional negligence and breach of fiduciary duties are alternative theories of legal malpractice that constitute distinct wrongs. Resolution Trust Corp. v. Holland & Knight, 832 F. Supp. 1528, 1530-32 (S.D. Fla. 1993). An attorney owes his or her client various duties:

---

[21]        In referring to the state court's findings, the Court is not accepting or relying on those findings as accurate or correct. Instead, the Court recognizes that the state court made those rulings, demonstrating that further argument regarding service during the brief period that Mateer represented Plaintiff would have been unsuccessful.

An attorney's reasonable duties include the duty of care, which requires an attorney to have the knowledge and skill necessary to confront the circumstances of each case. In addition, "the attorney is under a duty at all times to represent his client and handle his client's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity."

Id. at 1530-31 (internal citations omitted). A claim of negligence is based on a breach of an attorney's duty of care while a claim of breach of fiduciary duty is based on a breach of the duty of loyalty. Id. at 1531-32. Accordingly, the Court will address each claim separately.

### A. Breach of Fiduciary Duty

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages."[22] Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002)**.** "A person acting in a fiduciary or confidential capacity has a duty to make a full and fair disclosure of material facts to a person reposing confidence in him." Id. (internal citations omitted); see also Resolution Trust Corp., 832 F. Supp. at 1531 ("[A]n attorney breaches the duty of loyalty when the attorney obtains a personal advantage from the client or when there are circumstances that create adversity to the client's interest."). There is no dispute that the attorney-client relationship creates a fiduciary duty on the part of the attorney. See Joint Motion to Dismiss at 10; see also FDIC v. Martin, 801 F. Supp. 617, 620 (M.D. Fla. 1992)

---

[22] In the Third Amended Complaint, Plaintiff alleges that he does not have to show causation for certain breaches of fiduciary duty. See Third Amended Complaint at 13. Although Plaintiff has not cited to any authority, the Court recognizes that Florida law permits an award of nominal damages "[w]here a breach of fiduciary duty is shown but no actual damages are proved." Minotty v. Baudo, 42 So. 3d 824, 836 (Fla. 4th DCA 2010) (citing Stevens v. Cricket Club Condo., Inc., 784 So. 2d 517, 519 (Fla. 3d DCA 2001); see also Rocco v. Glenn, Rasmussen, Fogarty & Hooker, P.A., 32 So. 3d 111, 116 n.2 (Fla. 2d DCA 2009). However, to the extent that Plaintiff is arguing he is entitled to damages without proving that the alleged breach of fiduciary duty caused those damages, Plaintiff is incorrect.

(citing Armour & Co. v. Lambdin, 16 So. 2d 805 (Fla. 1944)).

Indeed, a court in this district considered a claim for breach of such a duty in Martin, 801 F. Supp. at 620-21. There, the FDIC, as receiver for a failed savings and loan institution, brought legal malpractice and breach of fiduciary duty claims against a law firm that was representing the institution. Id. at 618-21. The FDIC alleged that the law firm failed to disclose to the lending institution material information regarding the outstanding debt of potential loan recipients. Id. at 618-19. After the loans were made, the debtors defaulted, causing over two million dollars in losses. Id. at 619. The district court denied summary judgment because it found, based on deposition testimony provided by the plaintiff, that there were genuine issues of material fact with respect to what the law firm knew or should have known about the outstanding debt at the time of its representation. Id. at 620.

The instant case differs significantly from Martin. Here, Plaintiff alleges that Mateer and Thompson breached their fiduciary duty because they failed to disclose a relationship between the state court judge and Dinkins, opposing counsel in the State Action. See Third Amended Complaint at 15.[23] Plaintiff further suggests that Mateer, Thompson, and Dinkins were actively engaged in a conspiracy to force Plaintiff into a settlement.[24] See Third

---

[23]     In his Third Amended Complaint, Plaintiff alleges that Dinkins and Signbush were members of the same association and were personal friends. See Third Amended Complaint at 2-3, 11, 15. However, the undisputed record evidence establishes that Dinkins is a member of an elk lodge, but is unaware of whether Singbush is also a member. See Answers of Defendant, Lewis Dinkins, to Interrogatories from Plaintiff, Exhibit I to the Response to Dinkins's Dispositive Motion (Doc. No. 185; Dinkins Interrog.) at 3. Regardless, Dinkins has affirmed, in his sworn interrogatory answers, that he is not a personal friend of Singbush. See id.

[24]     Plaintiff contends that during the off-record discussions, Thompson, Dinkins, and the state court "cut a deal" for Plaintiff to pay Southway $110,000 to settle the case and Dinkins $20,000 for his legal fees. See Third Amended Complaint at 13-14; Response to Joint Motion at 2; Response to Dinkins's Dispositive Motion at 10, 12. Plaintiff points to no evidence to support the allegation that

Amended Complaint at 13-14; Response to the Joint Motion at 2, 9; Response to Dinkins's Dispositive Motion at 10, 12. However, unlike <u>Martin</u>, Plaintiff has not provided any record evidence that supports his claims beyond his conclusory allegations. Plaintiff's allegations in the Third Amended Complaint and his arguments in the Responses are not evidence. <u>See</u> <u>West</u>, 346 F. App'x at 425-26. Further, to the extent that Plaintiff submitted evidence that could be reduced to admissible evidence at trial, Plaintiff's submissions do not raise a question of material fact as to Plaintiff's allegations. The only evidence submitted by Plaintiff relating to his allegations of conspiracy are the interrogatory responses of Dinkins, which support only the conclusion that there was no relationship. Indeed, Dinkins answered no to whether he was a personal friend of the state court judge, Singbush, and to whether he contributed to Singbush's campaign. <u>See</u> Dinkins Interrog. at 3. Plaintiff presented no contrary evidence. In light of the affirmative evidence in the record, Plaintiff's unsubstantiated suspicions are not enough to raise a genuine issue of material fact as to any relationship between Dinkins and Singbush.

Because Plaintiff has not established the existence of any relationship or agreement between Dinkins and Singbush, he certainly has not created an issue of material fact with respect to Mateer and Thompson's knowledge of that alleged relationship. Plaintiff has also not provided any evidence to prevent summary judgment regarding any violation of trust in

---

Thompson, Dinkins, and the state court conspired off the record for any purpose. Morever, in her response to Plaintiff's twenty-fourth interrogatory, Thompson indicated that discussions were off the record because "there was no need to be on the record. The Judge's desire was to get the case mediated." Renee Thompson's Answers to Interrogatories, Exhibit I to Response to Dinkins's Dispositive Motion (Doc. No. 184; Thompson Interrog.) at 3. Thompson acknowledged, although she could not recall exactly what words were used, that she encouraged Plaintiff to settle the matter. <u>See</u> <u>id.</u>

suggesting settlement. <u>See</u> Dinkins Interrog. at 8, 15 (denying conspiracy with Thompson, judge, and mediator). As discussed above, Mateer and Thompson filed Schwamm's affidavit in support of summary judgment, in which Schwamm opines that there was no departure from the expected degree of care in the representation of Plaintiff, which includes suggesting that he explore settlement. <u>See</u> Schwamm Aff. at 3. Plaintiff has not presented any contrary evidence or opinions nor has he objected to the admissibility of Schwamm's opinions. Based on the absence of any evidence in the record to create a question of fact as to whether Mateer and Thompson breached their fiduciary duties, they are entitled to summary judgment on that claim.

## B.  Professional Negligence

Turning to Plaintiff's negligence claim, the Court recognizes that there are three elements for a cause of action for legal malpractice: "(1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence was the proximate cause of loss to the client." <u>In re Witko</u>, 374 F.3d 1040, 1043-44 (11th Cir. 2004) (citing <u>In re Alvarez</u>, 224 F.3d 1273, 1276 (11th Cir. 2000)). The first element requires more than an assertion that an attorney-client relationship existed; the relationship must have "existed with respect to the acts or omissions upon which the malpractice claim is based." <u>Maillard v. Dowdell</u>, 528 So. 2d 512, 514 (Fla. 3d DCA 1988). An attorney is not liable for failing to take actions not contemplated in the course of his or her representation. <u>See</u> <u>Maillard</u>, 528 So. 2d at 515 (affirming dismissal of legal malpractice action because plaintiff did not allege that defendant had been "instructed to do anything other than represent plaintiff in the purchase of property"); <u>Kates v. Robinson</u>, 786 So. 2d 61 (Fla. 4th DCA 2001) (affirming dismissal

where plaintiffs alleged that the attorney they hired to collect on a judgment failed to investigate other individuals who could have been liable for the same claim).

The basis for Plaintiff's negligence/malpractice claim is similar to the basis for the breach of contract claim, namely that Mateer and Thompson failed to challenge the Counterclaim and Lis Pendens when they knew or should have known the case was fraudulent, and that they failed to provide sufficient legal representation.[25] Mateer and Thompson's legal expert, Schwamm, has opined that challenging the Lis Pendens was outside the scope of Mateer and Thompson's representation, and therefore they had no duty to challenge it. See Schwamm Aff. at 2. More importantly, neither the Engagement Agreement nor any other record evidence creates a question of fact as to Mateer and Thompson's obligations to challenge the Lis Pendens.[26] Additionally, even if a question of fact existed as to whether Mateer and Thompson had an obligation to challenge the Lis

_____

[25]    Additionally, in his Third Amended Complaint, Plaintiff alleges that Mateer and Thompson "breached their duty of care, because they knew that Dinkins's action was a fraud and they failed to prosecute plaintiff's case," citing the Mediation Statement that Thompson sent to the mediator. See Third Amended Complaint at 18-19. Contrary to Plaintiff's allegations, the Mediation Statement demonstrates that Mateer and Thompson did raise issues at the mediation regarding false testimony and potential punitive damages. See Mediation Statement. Moreover, as the August 9 and September 10 Transcripts and the Mediation Statement reflect, there had not been opportunity for Mateer and Thompson to present those issues to the state court. Indeed, at the August 9 hearing, Thompson cross-examined Mr. Zarcone about the permitting issue discussed in the Mediation Statement, see August 9 Transcript at 77-87, but the hearing concluded before Southway finished its case in chief. Id. at 84, 97. No witnesses were called or evidence presented at the September 10 hearing, as the parties proceeded to mediation instead. See generally September 10 Transcript. Following the mediation, Mateer and Thompson withdrew from the case, and accordingly, had no further opportunity to present evidence on behalf of Plaintiff and Goldstone. See Agreed Motion; Order Granting Agreed Motion; State Court Docket.

[26]    The same is true for Plaintiff's argument that Mateer and Thompson were negligent in not filing a claim with Southway's insurance company, as there is no record evidence to support the allegation that such an action fell within the firm's engagement. See Third Amended Complaint at 19; see also Thompson Interrog. at ¶¶4-5 (stating that she did not collect insurance information).

-26-

Pendens, Plaintiff has not presented any evidence to create an issue of fact on the elements of either neglect or causation. He has failed to rebut the Schwamm opinions by presenting any evidence suggesting how Mateer and Thompson could have successfully challenged the Lis Pendens. Finally, Plaintiff has failed to suggest how the existence of the Lis Pendens was in any way causally related to the loss of his home.[27]

With respect to Plaintiff's allegations that Mateer and Thompson knew that Plaintiff was not properly served, see Third Amended Complaint at 19, the August 9 Transcript demonstrates that Thompson did raise a lack of service regarding the summary judgment motion and the state court rejected that argument. See August 9 Transcript at 10-14. Plaintiff has not presented any evidence supporting his claim that Mateer and/or Thompson neglected their reasonable duties as there is nothing in the record even suggesting that they failed to act reasonably under the circumstances. See Schwamm Aff. at 2-3. Accordingly, summary judgment is proper as to Plaintiff's professional negligence claim.

## VIII. Unjust Enrichment against Mateer[28]

A claim for unjust enrichment under Florida law requires proof of the following

---

[27]    Citing Frazier v. Effman, 501 So. 2d 114 (Fla. 4th DCA 1987), Mateer also argues that even if there had been negligence in failing to challenge the Lis Pendens, subsequent counsel had the opportunity to rectify any alleged oversight if a basis to do so existed under the law. See Joint Motion at 17-18. In Frazier, a plaintiff failed to state a cause of action for failing to join a party to a medical malpractice within the statute of limitations when she had obtained subsequent counsel several months before the statute had run. See Frazier, 501 So. 2d at 115; see also Mitrani v. Druckman, 576 So. 2d 406 (Fla. 3d DCA 1991) (reversing the grant of summary judgment because the alleged negligence was creating of an impasse such that the plaintiffs could not complete a closing and it was unclear whether subsequent counsel could have rectified the situation).

[28]    Although Plaintiff's allegations in the unjust enrichment count of the Third Amended Complaint refer to both Mateer and Thompson, the Court again notes that it denied the Motion to Amend to the extent it sought to add new claims, including an unjust enrichment claim against Thompson. See September 15 Order at 13-14.

essential elements: "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1270 (11th Cir. 2009) (quoting Rollins Inc. v. Butland, 951 So. 2d 860, 876 (Fla. 2d DCA 2006)). Under Florida law, however, a claim for unjust enrichment is equitable in nature, and thus, not available when there is an adequate legal remedy. See Bowleg v. Bowe, 502 So. 2d 71, 72 (Fla. 3d DCA 1987) (per curiam).

Initially, the Court notes that Plaintiff's claim for unjust enrichment fails because an adequate remedy exists at law, that is, pursuing a claim for breach of the Engagement Agreement. In reaching this conclusion, the Court recognizes that breach of contract and unjust enrichment claims may be pled in the alternative. Donnelly v. Circuit City Stores, Inc., No. 5:06-cv-387-Oc-10GRJ, 2007 WL 896337, at *3 (M.D. Fla. Mar. 22, 2007). However, although Plaintiff may be entitled to plead in the alternative, that is not what Plaintiff has done in this case. Plaintiff's unjust enrichment claim relies on the factual predicate common to all its claims. See Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc., 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) ("The Defendants' quasi contract claim is predicated on the same set of allegations supporting their claims under FUTSA and FDUTPA. Accordingly, because an adequate remedy exists at law, the Defendants have not stated a claim upon which relief may be granted for breach of contract implied in law (quasi contract,

quantum meruit, or unjust enrichment).").[29]  That factual predicate common to Plaintiff's

claims alleges a contractual relationship with Mateer and deficient legal representation.  See

generally Third Amended Complaint.  Indeed, the allegations specific to Plaintiff's unjust

enrichment claim allege that Mateer (and Thompson) "knowingly and voluntarily accepted

the monies from plaintiff for skilled legal representation, but instead they gave [P]laintiff

faulty, deficient, and defective legal representation and failed to meet the standard of care

imposed by the attorney client relationship" and that such deficient representation prevented

Plaintiff from overturning the judgment against him and from getting a judgment against

Southway.  Third Amended Complaint at 20.  Thus, Plaintiff's unjust enrichment claim is

predicated on Mateer's failure to perform pursuant to the Engagement Agreement, and is

due to be dismissed.  See Bowleg, 502 So. 2d at 72; see also Kraft Co., Inc. v. J & H Marsh

& McLennan of Fla., Inc., No. 2:06-CV-6-FtM-29DNF, 2006 WL 1876995, at *3 (M.D. Fla.

July 5, 2006) ("Count IV alleges a claim for unjust enrichment based upon money paid to

defendant pursuant to the contract. . . .  Here, it is undisputed that Kraft and Marsh entered

into a contract in which Marsh agreed to provide insurance brokerage services, including

insurance procurement, administration of the policies, and claims resolution. The Court finds

that a claim for unjust enrichment is unavailable to Kraft because of the existence of a legal

remedy.").

     Even if Plaintiff did not have an adequate remedy at law, his unjust enrichment claim

---

[29]     Other than to parrot the elements of a cause of action for unjust enrichment, Plaintiff's
unjust enrichment claim contains no allegations independent of those common to the remaining claims.
See Third Amended Complaint at 19-20.

would fail.  The alleged benefit Mateer retained is the money Plaintiff paid the firm for services rendered.  See Third Amended Complaint at 20.  Plaintiff alleges that these funds were not earned because Mateer gave Plaintiff "faulty, deficient, and defective legal representation and failed to meet the standard of care imposed by the attorney client [sic] relationship."  Third Amended Complaint at 20.  As discussed above, Mateer has provided evidence that it performed as agreed under the contract and that its representation was not deficient.  See Schwamm Aff.; State Docket; August 9 Transcript.  Plaintiff has not presented any contrary evidence.[30]  Although Plaintiff lists an invoice number, date and amount in his Response, he does not provide the invoices themselves, and, assuming that Plaintiff had provided this information, it would show only that the firm billed Plaintiff, but nothing about whether the work was done or done competently.  See Response to Joint Motion at 10-11. Indeed, Plaintiff has not provided the Court with any evidence suggesting that Mateer did not perform the work as billed in those invoices.[31]  Accordingly, there is no issue of material fact as to Plaintiff's unjust enrichment claim and Mateer is entitled to summary judgment.

---

[30]     Plaintiff has submitted an e-mail from Mr. Wells to Plaintiff, which states, in pertinent part that Mr. Wells "was at the Courthouse in Ocala reviewing the court file to check on documents I could not find in the file that Ms. Thompson gave us."  See Exhibit B to the Response to the Joint Motion.  If the e-mail were in an admissible form, the statement merely reflects that certain documents were not provided by Thompson; it does not suggest that those documents were never filed.

[31]     Plaintiff refers to invoices from two other cases, in which he asserts Mateer and Thompson "did exactly the same thing which shows their pattern of behavior."  Response to Joint Motion at 11.  However, the Court notes that if this information were provided in an appropriate form of evidence, rather than simply an argument, it would not be admissible because it is character evidence.  See Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with that character or trait.").

## IX. Negligence against Dinkins[32]

To recover under a theory of negligence, a plaintiff generally must demonstrate that a defendant owed a legal duty of care to the plaintiff that the defendant breached, and that the breach of that duty caused damages. See Williams v. Davis, 974 So. 2d 1052, 1056 (Fla. 2007). "An attorney's liability for negligence in the performance of his or her professional duties is limited to clients with whom the attorney shares privity of contract." Espinosa v. Sparber, Shevin, Shapo, Rosen and Heilbronner, 612 So. 2d 1378, 1379 (Fla. 1993) (citing Angel, Cohen & Rogovin v. Oberon Invs., N.V., 512 So. 2d 192, 194 (Fla. 1987)). In other words, an attorney only owes a duty to his client, not the opposing party. See Johnson v. The Bank of New York Mellon Trust Co., N.A., No. 1:10-cv-249-SPM-GRJ, 2011 WL 678635, at *4 (N.D. Fla. Feb. 03, 2011), adopted by 2011 WL 1119615 (N.D. Fla. Mar. 28 2011).

---

[32]    Although not captioned as a separate count, Plaintiff also alleges that Dinkins abused the legal process by filing suit to achieve a result the law did not intend. See Third Amended Complaint at 24. Dinkins does not address a claim for abuse of process, but Plaintiff refers several times to attempts to extort money from him, and argues that Dinkins abused the legal process. See Response to Dinkins's Dispositive Motion at 1-3. Because the Court is obligated to construe Plaintiff's pleadings liberally as he is proceeding pro se, the Court has reviewed the alleged abuse of process claim and finds that it is insufficient. "A cause of action for abuse of process contains three elements: (1) that the defendant made an illegal, improper, or perverted use of process; (2) that the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) that, as a result of such action on the part of the defendant, the plaintiff suffered damage." S & I Investments v. Payless Flea Market, Inc., 36 So. 3d 909, 917 (Fla. 4th DCA 2010) (internal citation omitted). It is not enough that the defendant filed a complaint and had it served on the defendant; the plaintiff must demonstrate the "improper use of process after it issues." Id.; see also Peckins v. Kaye, 443 So. 2d 1025 (Fla. 2d DCA 1983). The "lack of foundation of the asserted cause of action itself is actually irrelevant to the tort of abuse of process." Cazares v. Church of Scientology of Cal., Inc., 444 So. 2d 442, 444 (Fla. 5th DCA 1983). Here, Plaintiff has alleged only that Dinkins filed his counterclaim without adequately researching it, i.e. that it lacked a proper foundation. This does not constitute an abuse of process as a matter of law, because the filing of a counterclaim for recovery of perceived damages and the recording of a lis pendens are proper legal purposes. Accordingly, to the extent that Plaintiff is asserting a claim for abuse of process, the claim fails as a matter of law.

In <u>Johnson</u>, the plaintiff alleged that the defendants had a duty to ensure all men and women were treated equally.  <u>See</u> <u>id.</u>  The court rejected that claim noting that "Florida law does not recognize a legal duty owed by counsel for one side to an opposing party in a legal proceeding."  <u>Id.</u> at *11 (citing <u>Hartford Ins. Co. of Midwest v. Koeppel</u>, 629 F. Supp. 2d 1293, 1298 (M.D. Fla. 2009)).  Here, as in <u>Johnson</u>, Plaintiff argues that "everyone has a duty of care for others . . . " and alleges that Dinkins breached his duty of care.  <u>See</u> Third Amended Complaint at 26.  However, these allegations are legally insufficient to allege the existence of a legal duty from Dinkins to Plaintiff.  Dinkins was the attorney for the opposing party in the State Action; he simply owed Plaintiff no duty.  <u>See</u> <u>Johnson</u>, 2011 WL 678635, at *11.  Because Plaintiff fails to adequately allege that Defendant Dinkins owed him a legal duty, and presents no facts suggesting the existence of any duty, an essential element of negligence under Florida law, his claim must fail as a matter of law and summary judgment is due to be granted as to this claim.[33]

_____

[33]    If Plaintiff could amend his complaint to somehow establish the required elements, Dinkins would be immune from liability under the litigation privilege.  <u>See</u> <u>Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.</u>, 639 So. 2d 606, 608 (Fla. 1994).  In <u>Levin</u>, the Florida Supreme Court explained and extended Florida's litigation privilege:

> In balancing policy considerations, we find that absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior such as the alleged misconduct at issue, so long as the act has some relation to the proceeding.  The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct during the course of a judicial proceeding.  Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting or defending a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.

<u>Id.</u>; <u>see</u> <u>also</u> <u>Echevarria, McCalla, Raymer, Barret & Frappier v. Cole</u>, 950 So. 2d 380 (Fla. 2007); <u>Williams v. Carney</u>, 157 F. App'x 103, 107-08 (11th Cir. 2005).  The alleged conduct in this case involves the filing of a counterclaim and a lis pendens, which are patently related to the State Action.

### X. Conclusion

Mateer and Thompson have established that no genuine issue of material fact exists with respect to any of Plaintiff's claims against them and Plaintiff has not provided the Court with any evidence to create a question of fact to preclude summary judgment. Plaintiff also has not sufficiently alleged a claim of negligence against Dinkins. Thus, both Motions are due to be granted.

Accordingly, it is hereby **ORDERED:**

1. The Joint Dispositive Motion for Summary Judgment and Supporting Memorandum of Law of Defendants Mateer & Harbert, P.A., and Renee Thompson (Doc. No.178) is **GRANTED**.

2. The Clerk of the Court is directed to enter **JUDGMENT** in favor of Defendants Mateer & Harbert, P.A. and Renee Thompson, and against Plaintiff Everette Weaver.

3. The Amended & Dispositive Motion of Defendant Dinkins for Summary Judgment (Doc. No. 179) is **GRANTED**.

4. The Clerk of the Court is directed to enter **JUDGMENT** in favor of Defendant, Lewis Dinkins, and against Plaintiff Everette Weaver.

5.     The Clerk of the Court is further directed to terminate any remaining pending

motions and deadlines as moot and close the file.[34]

**DONE AND ORDERED** in Chambers, this 27th day of July, 2012.

MARCIA MORALES HOWARD
United States District Judge

lc16

Copies to:

Pro Se Parties
Counsel of Record

---

[34]    See Abdullah v. City of Jacksonville, 242 F. App'x 661, 662 (11th Cir. 2007) (affirming district court's denial of motion to dismiss as moot after granting motion for summary judgment).